IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DESHAWNDRA D HUDSPETH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-02664-N |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

### ORDER

This Order addresses Defendant City of Dallas's ("the City") motion to dismiss [5] and motion to strike Plaintiff Deshawndra D. Hudspeth's surreply [14]. Because Hudspeth did not seek leave of the Court to file a surreply, the Court grants the motion to strike. The Court grants in part and denies in part the motion to dismiss.

### I. ORIGINS OF THE DISPUTE

This case arises from Hudspeth's employment with the City of Dallas.[1] Hudspeth began working for the Dallas Police Department in the Communications Division as a 911 Call Taker Trainee in 2014. Compl. ¶ 16 [1]. The City has a one year initial probationary period for 911 Call Taker Trainees. *Id.* ¶ 17. Hudspeth became pregnant during her first year. *Id.* ¶ 35. Hudspeth applied for leave under the Family and Medical Leave Act ("FMLA") but was denied because she had not been employed by the City for at least one

---

[1]The factual background here is taken from Hudspeth's complaint, which the Court must accept as true for purposes of this motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).

year. *Id.* ¶¶ 28–31. The City told her she could use her earned sick hours and vacation time instead. *Id.* ¶ 31. Hudspeth applied for medical leave without pay, which the City also denied. *Id.* ¶¶ 32–34. Hudspeth subsequently gave birth and had complications that kept her from returning to work. *Id.* ¶¶ 35–38. The City terminated her employment roughly a month after giving birth, before her doctor cleared her to return to work, and a day before she would qualify for FMLA leave. *Id.* ¶¶ 39–41. Hudspeth alleges the City terminated her employment only due to her absence from work. *Id.* ¶ 44.

Hudspeth filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 10. After receiving her right to sue letter from the EEOC, Hudspeth brought this action. Hudspeth claims that the City's probationary period policy, though facially neutral, has a disproportionate adverse effect on pregnant women, in violation of Title VII. *Id.* ¶¶ 12–14. Hudspeth also claims the City retaliated against her because of her pregnancy in violation of Title VII. *Id.* ¶ 12. The City now moves to dismiss the complaint, contending that Hudspeth does not a state claim for retaliation and failed to exhaust her administrative remedies as to her discrimination claim. *See* Def.'s Mot. to Dismiss [5].

## II. THE RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a

"court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS IN PART AND DENIES IN PART

#### A. Hudspeth's Retaliation Claim

Hudspeth claims the City retaliated against her because of her pregnancy in violation of Title VII.  Compl. ¶ 12.  "Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) (citing 42 U.S.C. § 2000e–3(a)).  "To state a claim for retaliation in violation of Title VII, the plaintiff must allege that her employer took an adverse employment action against her in retaliation for engaging in protected conduct." *Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 341 (5th Cir. 2014).  "As with race discrimination, plaintiff need not have pleaded all the elements of retaliation to survive a motion to dismiss, but the Court may explore the plaintiff's *prima facie* case at the dismissal

stage to determine whether the plaintiff can ever meet his initial burden to establish a *prima facie* case." *Evans Rhodes v. Nw. Diagnostic Clinic, P.A.*, 2013 WL 5603003, at *3 (S.D. Tex. 2013) (internal quotation marks omitted).

To establish a prima facie claim of retaliation, a plaintiff much establish "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). An employee engages in a protected activity when he "has opposed any practice made an unlawful employment practice by [Title VII]" or "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* 555 U.S. 271, 274 (2009) (noting that section 2000e-3(a) has an "opposition clause" and a "participation clause").  Here, Hudspeth claims taking pregnancy leave is a protected activity under Title VII.  *See* Pl.'s Resp. to Mot. to Dismiss 6.  But Hudspeth cites no authority to support her claim that taking pregnancy leave is a protected activity.

Taking pregnancy leave is not a protected activity under Title VII.[2]  "'Utilizing pregnancy benefits' does not constitute making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing, nor does it amount to opposing an unlawful

---

[2]This is in contrast to a retaliation claims brought under the FMLA.  *See Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 920 (5th Cir. 2015) ("'Protected activity' includes both exercising rights under the FMLA, such as taking leave, as well as opposing practices made unlawful under the Act.").

employment practice." *Ramjit v. Benco Dental Supply Co.*, 2012 WL 3024437, at *2 (M.D. Fla. 2012).  Nor is requesting medical leave related to pregnancy a protected activity. *See, e.g.*, *Madoffe v. Safelite Sols., LLC*, 2008 WL 2531450, at *3 (S.D. Ohio 2008) (collecting cases); *Speer v. Rand McNally & Co.*, 1996 WL 667810, at *8 n.3 (N.D. Ill. 1996) ("[T]here cannot be, any legally distinct cause of action for retaliation based on pregnancy, which is a characteristic or condition, not a 'protected activity' as that term is used in the context of retaliation claims."); *Edmund v. Metro. Transit Auth. of Harris Cty., TX*, 2009 WL 455268, at *6 (S.D. Tex. 2009) (Plaintiff's "complaints about the robbery incident, the fact that he filed a worker's compensation claim, and his request for a leave of absence, are not protected activity under Title VII.").  Nor does Hudspeth allege facts that taking pregnancy leave was either opposition to an unlawful employment practice or participation in a Title VII investigation to persuade the Court otherwise.  Accordingly, Hudspeth has not established a prima facie case for retaliation and the Court dismisses the claim.

### B. Hudspeth's Discrimination Claim

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e–2.  Disparate impact discrimination under Title VII "addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group."  *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir.

2006).  Here, Hudspeth claims the one year probationary period policy used by the City of Dallas has a disproportionate adverse effect on pregnant women.  Compl. ¶ 12.  The City contends, however, that Hudspeth did not exhaust her administrative remedies with the EEOC.  *See* Def.'s Mot. to Dismiss 6.

Under Title VII, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC before filing suit. *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990). "It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC."  *Blanchet v. Chevron/Texaco Corp.*, 368 F. Supp. 2d 589, 601 (E.D. Tex. 2004) (collecting cases). "Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).  Here, Hudspeth's EEOC charge complained of discrimination based on sex, disability, and pregnancy.[3]  App. to Mot. to Dismiss Ex. A, 1[1-1].  Specifically, Hudspeth's charge claimed that her wrongful termination was due to her pregnancy.  *Id.*  The City contends that this constitutes a failure to exhaust her administrative remedies "because her [charge] could not reasonably lead to an investigation of a disparate impact claim."  *See* Def.'s Mot. to Dismiss 8.

---

[3]The Court may properly consider this exhibit, though not attached to Hudspeth's complaint, because the charge is referred to in Hudspeth's complaint and central to her claim. *See Sullivan*, 600 F.3d at 546.

The exhaustion requirement balances two competing policies. First, "'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco*, 448 F.3d at788 (quoting *Sanchez*, 431 F.2d at 463). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788–89. To balance these interests, courts "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.* at 788. The original charge should "put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). "A complaint filed pursuant to Title VII may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge*." Grace v. Bank of Am.*, 2003 WL 23095993, at *3 (N.D. Tex. 2003) (quoting *Sanchez*, 431 F.2d at 466).

Thus "the question is whether a disparate-impact investigation might reasonably be expected to grow out of the facts that [plaintiff] did allege." *Pacheco*, 448 F.3d at 791. Hudspeth argues that a disparate impact investigation would reasonably be expected to grow out of the EEOC's investigation of her claim of pregnancy discrimination. The Court agrees. Any investigation into Hudspeth's termination would have encompassed an investigation into the policy responsible for her termination, here the one year probationary period. Hudspeth alleges the only reason for her termination was that she missed too many days of work during

the one year probationary period policy. *See* Compl. ¶¶ 44–45. Naturally, any investigation by the EEOC into her allegedly wrongful termination would have led the EEOC to the probationary period policy. *See Owen v. Stmicroelectronics, Inc.*, 2016 WL 2757368, at *3 (N.D. Tex. 2016) (noting that when determining whether a plaintiff exhausted administrative remedies in an ADEA case, which likewise requires exhaustion of administrative remedies, the question is whether the charge "provides enough information so that a resulting EEOC investigation would have touched upon the facially neutral, but actually discriminatory, employment policy").

The City contends that this case is analogous to *Pacheco*, where the Fifth Circuit held that an EEOC charge of disparate treatment did not exhaust administrative remedies for a disparate impact claim. *See* Mot. to Dismiss 7–8. *Pacheco* affirmed dismissal of disparate impact allegations "because of the following matters *taken together*: (1) [the charge] facially alleged disparate treatment; (2) [the charge] identified no neutral employment policy; and (3) [the charge] complained of past incidents of disparate treatment only." 448 F.3d at 792 (emphasis added). Although the City correctly points out that Hudspeth did not identify a neutral employment policy on the face of her EEOC charge, the Court can find no support for the contention that such a fact, standing alone, justifies dismissal of Hudspeth's disparate impact claim. Rather, before dismissal, courts conduct a "fact-intensive analysis of the administrative charge" where factors such as "the actual scope of the EEOC's investigation" may be considered. *McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 273–275 (5th Cir. 2008). The City's argument does not persuade the Court that Hudspeth's disparate impact claim

could not reasonably be expected to grow out of the charge of discrimination that she filed with the EEOC.

Here, an investigation into Hudspeth's discrimination based on her pregnancy would reasonably be expected to uncover the reason for Hudspeth's termination, the one year probationary period, which is the basis for her disparate impact claim. Keeping in mind that Title VII does not require a "plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies," the Court finds that Hudspeth exhausted her administrative remedies as to her disparate impact claim. *Pacheco*, 448 F.3d at 792 (citing *Sanchez*, 431 F.2d at 463–65). In so concluding, the Court notes that it "construe[s] employment discrimination charges with the utmost liberality." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) (internal quotation marks omitted). Because the scope of the EEOC investigation that could reasonably be expected to grow out of the charge reaches Hudspeth's claim for discrimination, even under a disparate impact theory, the Court holds she exhausted her administrative remedies.

## CONCLUSION

Accordingly, the Court grants the motion to dismiss as to Hudspeth's retaliation claim and the motion to strike Hudspeth's surreply. The Court denies the motion to dismiss as to Hudspeth's discrimination claim.

ORDER – PAGE 10

Signed February 17, 2017.

David C. Godbey
United States District Judge